**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

JEFFREY LYNN NEWMAN
CONNIE ELIZABETH NEWMAN
aka CONNIE RAMEY

        Debtors

Case No. 3:16-bk-33533-SHB
Chapter 7

**MEMORANDUM ON OBJECTION
TO CLAIM #1 OF DAVID MARKLEY**

**APPEARANCES**:    QUIST, FITZPATRICK & JARRARD, PLLC
        Michael H. Fitzpatrick, Esq.
        2121 First Tennessee Plaza
        800 S. Gay Street
        Knoxville, Tennessee 37929-9711
        Attorneys for Chapter 7 Trustee

        SCOTT D. HALL, ESQ.
        105 Bruce Street
        Sevierville, Tennessee 37862
        Attorney for David Markley

        LAW OFFICES OF MAYER & NEWTON
        John P. Newton, Jr.
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee 37919
        Attorneys for Debtors

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Objection to Claim #1 of David Markley ("Objection to Claim") filed by the Chapter 7 Trustee, Michael H. Fitzpatrick ("Trustee"), on April 10, 2017 [Doc. 52], asking the Court to disallow claim number 1-1 filed by David Markley ("Mr. Markley") in the amount of $6,740.00 ("Claim #1") from distribution to unsecured creditors because the claim is solely against the estate of Debtor Jeffrey Newman ("Mr. Newman") and the funds from which the distribution will be paid is the sole property of Debtor Connie Newman's ("Mrs. Newman") estate. On May 3, 2017, Mr. Markley filed his Response [Doc. 54] in opposition to the Objection to Claim, arguing that Claim #1 should be applied against both Debtors' estates and should be allowed for purposes of distribution.

A hearing was held on May 18, 2017, at which time the parties advised the Court that an evidentiary hearing would not be required and the issues could be resolved on briefs. Mr. Markley filed his brief on May 23, 2017 [Doc. 80], and the Trustee filed his brief on May 24, 2017 [Doc. 81]. The sole issue before the Court is whether Claim #1 is rightfully asserted against both Debtors' estates, as argued by Mr. Markley, or against Mr. Newman's estate only, as asserted by the Trustee. It is undisputed that if the debt is properly asserted against both estates, Mr. Markley is entitled to distribution, but if only Mr. Newman's estate is liable, Mr. Markley is not entitled to distribution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

I.   FACTS

Debtors commenced this joint Chapter 7 bankruptcy case on November 29, 2016, and both received a discharge on April 5, 2017. Pursuant to his statutory duties and at the Trustee's request, the clerk's office prepared and served a Notice of Need to File Proof of Claim Due to Recovery of Assets [Doc. 19] on January 4, 2017. Mr. Markley filed Claim #1 on December 22,

2

2016, attaching an itemized statement reflecting a breakdown of $5,000.00 for unpaid pre-petition rents and yard maintenance fees and $1,740.00 for post-petition rents, yard maintenance, and attorney's fees, for a total claim amount of $6,740.00 concerning rental property located at 2076 Grand Vista Drive, Sevierville, Tennessee ("Rental Property").

In support of his Objection to Claim, the Trustee relied on and attached the Basic Rental Agreement or Residential Lease ("Lease") executed by Mr. Newman on August 2, 2014 [Doc. 52-1], by which he agreed to pay $1,200.00 monthly for occupancy of the Rental Property for a one-year term from August 2014 to August 2015, after which the tenancy was converted automatically to a month-to-month term.  Specifically, the Lease included the following express provisions:

> This Rental Agreement or Residential Lease shall evidence the complete terms and conditions under which the parties whose signatures appear below have agreed. Landlord/Lessor/Agent, David P. Markley, Sr., shall be referred to as "OWNER" and Tenant(s)/Lessee, _____, shall be referred to as "RESIDENT." As consideration for this agreement, OWNER agrees to rent/lease to RESIDENT and RESIDENT agrees to rent/lease from OWNER for use solely as a private residence, the premises located at 2076 Grand Vista Dr. in the city of Sevierville.
>
> 1. **TERMS:**  RESIDENT agrees to pay in advance $1,200 per month on the 1 day of each month. This agreement shall commence on Aug. 2014 and continue: (check one)
> A. √  until Aug. 2015 as a leasehold. Thereafter it shall become a month-to-month tenancy. If RESIDENT should move from the premises prior to the expiration of this time period, he shall be liable for all rent due until such time that the Residence is occupied by an OWNER approved paying RESIDENT and/or expiration of said time period, whichever is shorter.
>
> . . . .
>
> 2. **PAYMENTS:**  Rent and/or other charges are to be paid at such place or method designated by the owner as follows 852 Caney Hollow Rd, Newport. All payments are to be made by check or money order and cash shall be acceptable. OWNER acknowledges receipt of the First Month's rent of $1,200, and a Security Deposit of $1,200 and additional charges/fees for 1,200 last month, for a total payment of $3,600.00. All payments are to be made payable to _____.

3. **SECURITY DEPOSITS:** The total of the above deposits shall secure compliance with the terms and conditions of this agreement and shall be refunded to RESIDENT within <u>30</u> days after the premises have been completely vacated less any amount necessary to pay OWNER; a) any unpaid rent, b) cleaning costs, c) key replacement costs, d) cost for repair of damages to premises and/or common areas above ordinary wear and tear, and e) any other amount legally allowable under the terms of this agreement.  A written accounting of said charges shall be presented to RESIDENT within <u>30</u> days of move-out.  If deposits do not cover such costs and damages, the RESIDENT shall immediately pay said additional costs for damages to OWNER.

. . . .

6. **OCCUPANTS:**  Guest(s) staying over 15 days without the written consent of OWNER shall be considered a breach of this agreement.  ONLY the following individuals and/or animals, AND NO OTHERS shall occupy the subject residence for more than 15 days unless the expressed written consent of OWNER obtained in advance _____.

. . . .

17. **TERMINATION:** After expiration of the leasing period, this agreement is automatically renewed from month to month, but may be terminated by either party giving to the other a 30-day written notice of intention to terminate.  Where laws require "just cause", such just cause shall be so stated on said notice.  The premises shall be considered vacated only after all areas including storage areas are clear of all RESIDENT'S belongings, and keys and other property furnished for RESIDENT'S use are returned to OWNER.  Should the RESIDENT hold over beyond the termination date or fail to vacate all possessions on or before the termination date, RESIDENT shall be liable for additional rent and damages which may include damages due to OWNER'S loss of prospective new renters.

. . . .

22. **PARTIAL INVALIDITY:** Nothing contained in this Agreement shall be construed as waiving any of the OWNER'S or RESIDENT'S rights under the law.  If any part of this Agreement shall be in conflict with the law, that part shall be void to the extent that it is in conflict, but shall not invalidate this Agreement nor shall it affect the validity or enforceability of any other provision of this Agreement.

. . . .

24. **JOINTLY AND SEVERALLY:** The undersigned RESIDENTS are jointly and severally responsible and liable for all obligations under this agreement.

. . . .

> 31. **ENTIRE AGREEMENT:** This Agreement constitutes the entire Agreement between OWNER and RESIDENT. No oral agreements have been entered into, and all modifications or notices shall be in writing to be valid.

[Doc. 52-1]. Only Mr. Newman signed the Lease as "Resident." Mrs. Newman did not sign the Lease, nor is she mentioned anywhere in the document.

For the reasons set forth in this Memorandum, the Court agrees with the Trustee and finds that under the Tennessee Uniform Residential Landlord Tenant Act ("TURLTA"), Mr. Newman, alone, was obligated under the terms of the Lease and only his bankruptcy estate is subject to Claim #1.

## II.    ANALYSIS AND CONCLUSIONS OF LAW

### A.    Standard for Objection to Claim

A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence as to the amount and validity of the claim, which is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The Bankruptcy Code defines a "claim" as:

> (A) [the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmetered, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) [the] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

Validity of a claim stems from a party's status as a creditor of the debtor, defined by the Bankruptcy Code as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[,]" 11 U.S.C. § 101(10)(A). In the event of an

objection, the objecting party must present evidence rebutting the proof of claim by refuting at least one allegation that is essential to the legal sufficiency of the claim, after which the burden of proof shifts to the claimant to prove the claim's validity by a preponderance of the evidence. *In re Cleveland*, 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (citation omitted).

Although Debtors filed this case jointly, "the estates of husband and wife should not be consolidated when the creditors of one estate will benefit to the detriment of creditors of the other and when the affairs and the assets of the couple are not so intermingled as to prevent the efficient administration of the estates if they are co-administered." *In re Monroe*, No. 05-65203-7, 2007 WL 3022801, at *3 (Bankr. D. Mont. Oct. 11, 2007) (quoting 2 Collier on Bankruptcy § 302.06 (15th ed. 2006)). Here, the Trustee objects to Mr. Markley's status as a creditor of Mrs. Newman, whose estate is the sole source of distribution to unsecured creditors.

**B.     The Tennessee Uniform Residential Landlord Tenant Act**

In defense of his claim, Mr. Markley argues that because Mrs. Newman lived at the Rental Property, she is obligated to pay rent for use and occupancy thereof pursuant to TURLTA and Tennessee common law. The Trustee does not dispute that TURLTA applies in this case or that Mr. Markley falls within TURLTA's definition of a "landlord," i.e., "the owner, lessor, or sublessor of the dwelling unit." Tenn. Code Ann. § 66-28-104(5). The Trustee, however, disputes Mr. Markley's contention that TURLTA's definition of "tenant," meaning "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others" includes both Debtors when only Mr. Newman executed the Lease. Mr. Markley asserts that even though he has a lease agreement with Mr. Newman, Mrs. Newman is also obligated to pay rent under Tennessee Code Annotated section 66-28-201(b), which states that "[i]n absence of a lease

6

agreement, the tenant shall pay the reasonable value for the use and occupancy of the dwelling unit." The Trustee disagrees with Mr. Markley's asserted application of section 66-28-201(b).

The statutory purposes of TURLTA are to "simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant; encourage landlord and tenant to maintain and improve the quality of housing; promote equal protection to all parties; and make uniform the law in Tennessee." Tenn. Code Ann. § 66-28-103(b). To accomplish these purposes, TURLTA is to be "liberally construed and applied," and the legal principles of law and equity are to "supplement its provisions [unless otherwise displaced]." Tenn. Code Ann. § 66-28-103(a), (c).

The Lease here unquestionably falls within the statutorily defined term "rental agreement," which includes "all agreements, written or oral, and valid rules and regulations adopted under § 66-28-402[1] embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises." Tenn. Code Ann. § 66-28-104(11).[2] Nor is there any dispute that under the Lease, "[t]he undersigned RESIDENTS [were] jointly and severally responsible and liable for all obligations under this agreement." [Doc. 52-1 at ¶ 24].

---

[1] Section 66-28-402 provides:

(a) A landlord, from time to time, may adopt rules or regulations, however described, concerning the tenant's use and occupancy of the premises. It is enforceable against the tenant only if:
   (1) Its purpose is to promote the convenience, safety, or welfare of the tenants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of services and facilities held out for the tenants generally;
   (2) It is reasonably related to the purpose for which it is adopted;
   (3) It applies to all tenants in the premises;
   (4) It is sufficiently explicit in its prohibition, direction, or limitation of the tenant's conduct to fairly inform the tenant of what the tenant must or must not do to comply;
   (5) It is not for the purpose of evading the obligations of the landlord; and
   (6) The tenant has notice of it at the time the tenant enters into the rental agreement.
(b) A rule or regulation adopted after the tenant enters into the rental agreement is enforceable against the tenant if reasonable notice of its adoption is given to the tenant and it does not work a substantial modification of the rental agreement.

[2] Under section 66-28-201(a), "[t]he landlord and tenant may include in a rental agreement, terms and conditions not prohibited by this chapter or other rule of law including rent, term of the agreement, and other provisions governing the rights and obligations of parties. A rental agreement cannot provide that the tenant agrees to waive or forego rights or remedies under this chapter."

7

Mr. Markley's interpretation of section 66-28-201(b), however, fails to give meaning to the express caveat that it applies "*[i]n [the] absence of* a lease agreement." Tenn. Code Ann. § 66-28-201(b) (emphasis added). Here, Mr. Markley and Mr. Newman executed a lease agreement expressly providing that Mr. Newman is obligated to pay rent for his use and occupancy of the Rental Property. For that reason, by its express language, section 66-28-201(b) does not apply here. Because Mrs. Newman did not execute the Lease and is not even mentioned in it, she had no obligation to pay rents under the Lease, notwithstanding that she resided in the Rental Property.[3]

Additionally, Mr. Markley was not without recourse under the Lease. If Mrs. Newman lived in the Rental Property for four months without "the expressed written consent of OWNER obtained in advance," as Mr. Markley asserts in his brief, Mr. Newman was in breach of paragraph 6 of the Lease and, with 30 days' written notice, Mr. Markley could have terminated the Lease pursuant to paragraph 17. [Doc. 52-1 at ¶¶ 6, 17]. Mr. Markley likewise could have required Mrs. Newman to execute a lease agreement or required Debtors to sign jointly an amendment to the Lease adding Mrs. Newman as a "resident" and joint obligor. The fact that Mr. Markley did not exercise any of those rights does not convert the sole obligation of Mr. Newman into a joint obligation of both Debtors.

C.    **Tennessee Common Law**

The Court also finds that Mr. Markley's argument under Tennessee common law is inapplicable in light of TURLTA. As explained by the Tennessee Supreme Court, "[i]n

---

[3] Indeed, Mrs. Newman was an "occupant" under paragraph 6 of the Lease and Mr. Newman's failure to notify Mr. Markley of her occupancy under paragraph 6 likely constituted a breach by Mr. Newman, but her occupancy did not make her a "resident" under Lease or a tenant under TURLTA. Notably, TURLTA contains a provision that appears to acknowledge that occupants are not necessarily tenants: "The tenant shall . . . [a]ct and require other persons on the premises, *with the tenant's or other occupants'* consent, to act in a manner that will not disturb the neighbors' peaceful enjoyment of the premises." Tenn. Code Ann. § 66-28-401(5) (emphasis added).

construing statutes, this Court's role is 'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is derived from the plain and ordinary meaning of the statutory language unless the statute is ambiguous." *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (citing *State v. Blackstock,* 19 S.W.3d 200, 210 (Tenn. 2000); *Owens,* 908 S.W.2d at 926)).

> The General Assembly is presumed to know the state of the existing law when it enacts legislation. *Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Investors, LP.,* 221 S.W.3d 506, 511–12 (Tenn. 2007); *State v. Hawk,* 170 S.W.3d 547, 552 (Tenn. 2005). This presumption includes the General Assembly's knowledge of the state of the common law when it enacts legislation. *Statutes and Statutory Construction* § 50:1, at 164. Thus, legislative acts are construed with reference to the common law and should not be construed to displace the common law any further than they expressly declare or necessarily imply. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 679 (Tenn. 2002); *Harbison v. Briggs Bros. Paint Mfg. Co.,* 354 S.W.2d 464, 470 (1962); *Nichols v. Atnip,* 844 S.W.2d 655, 659 (Tenn. Ct. App. 1992).

*Seals v. H & F, Inc.*, 301 S.W.3d 237, 257 (Tenn. 2010).

> While the General Assembly has plenary power within constitutional limits to change the common law by statute, the rules of the common law are not repealed by implication, and if a statute does not include and cover such a case, it leaves the law as it was before its enactment. Nevertheless, when there is a conflict between the common law and a statute, the provisions of the statute must prevail.

*Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2000) (internal citations and brackets omitted). The General Assembly expressly enacted TURLTA to provide clarification, ensure maintenance and quality of rented housing, promote equal protection, and increase uniformity in the area of landlord-tenant law. Accordingly, TURLTA superseded any common law that directly conflicts with the provisions and requirements of TURLTA.

In support of his assertion that Mrs. Newman is equally obligated to pay rent under Tennessee common law, Mr. Markley cites to *Loague & Fisher v. City of Memphis*, 75 Tenn. 67, 69 (Tenn. 1881); *Greenwood v. Maxey*, 231 S.W.2d 315 (Tenn. 1950); and *Tenn. Rand, Inc. v. Automation Indus. Group, LLC*, No. E2009-00116-COA-R3-CV, 2010 WL 3852317 (Tenn. Ct. App. Sept. 29, 2010), for the proposition that "[n]othing else appearing, the mere occupancy of a property implies a contract to pay rent [and t]he mere occupation of property implies an agreement to pay a reasonable rent." [Doc. 80 at pg. 1-2]. His reliance on these cases, however, is misplaced because those cases concerned implied agreements between the parties concerned, and two of the cases involved commercial property, not residential, such that TURLTA would not have applied in any event.

In *Loague & Fisher*, the issue was whether the City of Memphis owed the plaintiffs rent for a stable built on property owned by the plaintiffs. The Tennessee Supreme Court affirmed a judgment for the City, stating that while "the law would imply a contract to pay rent from the mere fact of occupation whenever the relation of landlord and tenant exists by agreement express or implied," the jury's verdict that the plaintiffs had granted the City of Memphis "a gratuitous license" or "voluntary donation" was sufficiently supported by the evidence. *Loague & Fisher*, 75 Tenn. at 68-69.

In *Greenwood*, the issue was whether the chancellor improperly withdrew from the jury the question of whether the parties had an implied agreement for the defendant to live in the subject property free from paying rent. In finding that the chancellor had, in fact, made a mistake in withdrawing the issue from the jury, the Tennessee Supreme Court simply stated that, based on the evidence and testimony of both parties to imply an agreement, "[n]othing else

10

appearing[,] the mere occupancy of the property implies a contract to pay rent." 231 S.W.2d at 319.

In *Tennessee Rand*, coined by the Tennessee Court of Appeals as "a complex business divorce case," the issue was whether the defendant-company had been unjustly enriched by payments of rents and taxes by the plaintiff-company on buildings used by the defendant. 2010 WL 3852317, at *1. Agreeing with the trial court, the appellate court rejected the defendant's argument that it should not be liable for reimbursement of rents and taxes paid because it had not agreed to the plaintiff's agreement with the landlord, stating that "if [the defendant] had not liked the arrangement, it should not have moved into the building without negotiating its own arrangement with the landlord" and that "[t]he mere occupation of property implies an agreement to pay a reasonable rent." 2010 WL 3852317, at *24.

Indeed, section 66-28-201(b) appears to codify the principle in the common law – with the caveat that the section is inapplicable if there is a lease agreement. In this case – clearly governed by TURLTA – there was an express agreement between Mr. Markley and Mr. Newman under which he clearly was obligated under the Lease to pay rent for his occupancy of the Rental Property. The record here, however, does not establish either an express or implied agreement between Mr. Markley and Mrs. Newman under which she is liable for payment of rent under the Lease.

### III.  CONCLUSION

Because Mr. Markley has no "right to payment" from Mrs. Newman, he does not possess a valid and enforceable claim against Mrs. Newman's estate, and he is not a creditor thereof. 11 U.S.C. §§ 101(5)(A), (10)(A).  Accordingly, Mr. Markley's claim may be properly asserted only against Mr. Newman's bankruptcy estate, and the Trustee's Objection to Claim shall be SUSTAINED.  An order consistent with this Memorandum will be entered.

FILED:  June 14, 2017

> BY THE COURT
>
> /s/ Suzanne H. Bauknight
>
> SUZANNE H. BAUKNIGHT
> UNITED STATES BANKRUPTCY JUDGE